IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| AMY LYNN TYSON SENN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:11cv467-WKW |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Amy Lynn Tyson Senn brings this action pursuant to 42 U.S.C.§ 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act. Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**STANDARD OF REVIEW**

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. *Davis v. Shalala,* 985 F.2d 528, 531 (11th Cir. 1993); *Cornelius v. Sullivan,* 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Cornelius,* 936 F.2d at 1145. A

reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis,* 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius,* 936 F.2d at 1145-46.

## BACKGROUND

Plaintiff filed her application for disability benefits on August 14, 2008, alleging that she became disabled on August 28, 2007, due to back pain, leg pain, and headaches following a motor vehicle collision. (R. 97, 137). Her application was denied at the initial administrative level, and plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 65). The ALJ held a hearing on February 10, 2010, at which plaintiff was represented by counsel. (R. 11, 26-56). On April 2, 2010, the ALJ issued a decision finding plaintiff has not been disabled as defined in the Social Security Act since August 28, 2007, her alleged onset date. (R. 8-25). The ALJ followed the five-step evaluation for determining disability benefits and concluded that plaintiff had severe impairments of lumbar disc

disease, obesity, and a history of carpal tunnel syndrome. (R. 13); 20 C.F.R. § 404.1520(a)(4). He concluded at step three that none of plaintiff's impairments or combination of impairments met or medically equaled one of the listings. (R. 17). The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a substantial range of light work. (R. 17-20). At step four, he determined that plaintiff could perform her past relevant work as a secretary and accounting clerk. (R. 20). Alternatively, at step five, the ALJ also determined that plaintiff could transfer her past work skills to several clerical positions. (R. 21).

Plaintiff appealed the ALJ's decision to the Appeals Council, and on May 11, 2011, the Appeals Council denied review. (R. 1-7). Plaintiff then filed the present action seeking review of the Commissioner's final decision. (Doc. No. 1).

## DISCUSSION

Plaintiff contends the Commissioner's decision is due to be reversed because (1) the ALJ made many factual errors and failed to consider the vocational expert's testimony in determining that plaintiff was not disabled; (2) the ALJ did not specify which subpart of listing § 1.00 (musculoskeletal) he considered, and plaintiff maintains that she meets or medically equals listing § 1.02(A) or § 1.04(A); and (3) this court should consider new evidence concerning the decline of her health. (Doc. No. 16, at 1-2).

### The ALJ's Factual Errors Were Harmless, and the ALJ Did Not Improperly Ignore the Vocational Expert's Testimony

Plaintiff argues that the ALJ made factual errors in his findings and failed to give

3

adequate weight to the vocational expert's testimony that contradicted the ALJ's conclusions. (Doc. No. 16, at 2-7). The "harmless error" doctrine applies to review of the Commissioner's decisions, and plaintiff bears the burden of demonstrating that an error is harmful. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error analysis in review of social security disability determination); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

First, plaintiff argues the ALJ erred in stating, "The fact that [plaintiff] attends college and cares for her 2 young children suggests that she is capable of performing some type of work activity." (R. 13, citing R. 105, 109-13, 474-75, 532). The evidence on which the ALJ relied, plaintiff argues, was her reports of constant pain at a level of eight on a ten-point scale and a radiology report that has nothing to do with plaintiff's attending school or raising children. (R. 474-75). The evidence that the ALJ cited also included plaintiff's earnings statements and reports of medical treatment. This court concludes that any error in citation was harmless, as it was clear from plaintiff's testimony at the hearing that she attended college part-time and helped care for her children, who were four and five years old at the time of the hearing. In determining plaintiff's RFC, the ALJ was entitled to rely on "other factors" in evaluating plaintiff's subjective complaints, and the ALJ properly considered plaintiff's care of her children and enrollment in college, at least on a part-time basis, among these factors during the relevant period. *See* 20 C.F.R. § 404.1529(c)(3)(vii) (ALJ may

4

consider "other factors" in determining claimant's credibility); *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995) ("once such an impairment [that could reasonably be expected to produce pain] is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability" and ALJ must give explicit and adequate reasons for discrediting a claimant's testimony regarding pain); *e.g., Dent v. Astrue*, 2009 WL 3418155, at *6 (M.D. Ga. Oct. 14, 2009) (ability to attend college classes properly considered as daily activity showing claimant not as limited as alleged); *Lofton v. Apfel*, 2000 WL 549966, at *8 (S.D. Ala. Apr. 20, 2000) (explicit reasons for discounting testimony of pain included claimant's care of children).

Second, plaintiff argues that the ALJ misconstrued July 3, 2008, records from Gary Dawson, M.D., a pain specialist, when the ALJ stated "[s]he reported experiencing mild pain only." (R. 14). In fact, it was Dr. Dawson's own objective assessment that plaintiff "seem[ed] to be in mild pain," but during the visit plaintiff described her pain to Dr. Dawson as "constant, moderate in intensity, aching, burning, sharp, stabbing, and tingling," and her statement to Dr. Dawson about a month later was that her pain was "excruciating." (R. 14, 352, 380-81). However, any error the ALJ made in describing the report was harmless. The ALJ correctly recounted that Dr. Dawson said that plaintiff had pain in her lumbar area, full active lumbar range of motion with flexion, limited active lumbar range of motion with extension to ten degrees, full and painless range of motion in all major muscle groups, no

laxity of subluxation of joints, no masses, effusions, misalignment, crepitus, or tenders in joints. She had a positive right Fabere test, but negative left Fabere test, straight leg raises, negative Waddell findings, normal reflexes, and 5/5 muscle strength in all groups. (R. 352, 381). The ALJ included the additional treatment notes, as well as information about epidural steroid joint injections plaintiff received in her sacroiliac joint. (R. 14, 350-52, 381). Plaintiff reported receiving two to four weeks of relief from the injections, and she told Dr. Dawson that for four weeks after the injection she could "perform any activity." (R. 351, 354). When there are inconsistencies in the record, it is the duty of the ALJ to resolve conflicts in the evidence, giving reasons to credit some evidence and discredit other evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("What is required is that the ALJ state specifically the weight accorded to each item of evidence and why he reached that decision."). The ALJ articulated specific reasons for finding that plaintiff's subjective complaints were inconsistent with the objective medical evidence and other evidence in the record, and the court finds the ALJ's inaccurate statement about plaintiff's pain on July 3, 2008, to be harmless.

Third, plaintiff argues that the ALJ incorrectly stated that plaintiff's October 3, 2007, "neurological exam was normal," even though George Canedo, M.D., a neurology and neuromuscular specialist, left the "NEUROLOGIC:" impression blank on the October 3, 2007, visit, and at her October 31, 2007, follow-up, Dr. Canedo reported plaintiff had "[d]ecreased sensation of her lower extremity with straight leg raising test positive and mild

depressed ankle reflex." (R. 14, 428, 430). In fact, directly under the "NEUROLOGIC:" heading in the October 3, 2007 notes, Dr. Canedo reported his objective findings regarding plaintiff's mental status, cranial nerves, motor strength, sensory, reflexes, coordination, and gait. (R. 430). Although on October 3, 2007, Dr. Canedo reported positive depressed ankle reflex and positive straight leg raising on the left, Dr. Canedo reported only "*[s]ubjective* sensory deficits distally on her *lower* extremities on the left. Numbness of the upper extremities, nonspecific nerve distribution." (R. 430) (emphasis added). Dr. Canedo also reported on October 3, 2007, that plaintiff was alert and oriented, and her speech, mood, and behavior were normal. (R. 430). He reported that plaintiff's motor strength was 5/5; her bulk and tone were symmetrical in all extremities; she had no abnormal movements, fasciculations or tremors; she had no apraxia, ataxia, or dysmetria; she could stand up, ambulate, turn, stop, and walk in a straight line. (R. 430). On October 31, 2007, Dr. Canedo reported "[d]ecreased sensation of plaintiff's lower extremity with straight leg raising test positive," but only "mild depressed ankle reflex," and Dr. Canedo reported "subjective decreased sensation of [plaintiff's] upper extremities especially on the left." (R. 428). As the ALJ correctly noted, on October 31, 2007, Dr. Canedo diagnosed plaintiff's radicular process as only "[m]ild," and he recommended "[c]onservative management while undergoing neurosurgical workup." (R. 14, 428). To the extent that the findings were not "normal," they do not undermine the ALJ's determination that plaintiff's impairments did not result in functional limitations inconsistent with the ALJ's RFC assessment. Thus, any error the ALJ

made in stating that the October 3, 2007, neurological exam was normal was harmless. *See Diorio*, 721 F.2d at 728.

Fourth and sixth, plaintiff argues the ALJ erred in finding that plaintiff's daily activities weigh against finding her disabled because she attended Chatahoochee Community College and drove ninety minutes each way, when in fact she testified that she attended Troy University, drove only fifteen minutes each way, and reduced her course load because of her pain and difficulty concentrating. (R. 15, 19, 31-33). Plaintiff is right that the ALJ incorrectly stated she drove ninety minutes to Chatahoochee Community College, but the ALJ's error was, again, harmless. The salient point is that plaintiff's college attendance was inconsistent with her subjective statements regarding her functional limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Macia v. Bowen*, 829 F.2d 1009, 1011-12 (11th Cir. 1987) (ALJ properly considered daily activities at the fourth step of the evaluation). Plaintiff testified that after her injury she reduced her course load, but each semester she still attended a ninety-minute college class once a week, completed thirty minutes to an hour of homework, and was earning an overall grade point average of 3.85 out of 4. (R. 31, 33). In addition, as the ALJ noted, plaintiff rode without significant difficulty on the trip from Phenix City to Birmingham for her daughter's doctor visits, a distance of about 140 miles. (R. 18, 43). This evidence was relevant in determining whether plaintiff's daily activities were inconsistent with her subjective symptoms, and the ALJ's misstatement regarding plaintiff's travel was harmless. *See Diorio*, 721 F.2d at 728.

Fifth, plaintiff argues that the ALJ erred in discrediting plaintiff's testimony that she cannot stand or walk due to lumbar spasms and has to lie down, when the ALJ stated there was no medical evidence of "muscle atrophy due to immobility." (R. 19, 37-38). Plaintiff argues that it is medically incorrect to equate muscle spasms with muscle atrophy. (Doc. No. 16, at 4). The court concludes, however, that the ALJ reasonably considered plaintiff's testimony about muscle spasms in light of all the medical evidence in determining the limiting effect of her pain. *Cf.* SSR 88-13, 1988 WL 236011, at *2 (July 20, 1988) ("Medical history and objective medical evidence such as evidence of *muscle atrophy*, reduced joint motion, *muscle spasm*, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity.") (emphasis added), *superseded by* SSR 95-5, 1995 WL 670415 (Oct. 31, 1995), *superseded by* SSR 96-7, 1996 WL 374186 (July 2, 1996) (addressing relevant factors in assessing credibility of a claimant's statements about pain and symptoms). The ALJ summarized the medical evidence and pointed out plaintiff's contradictory statements, and the ALJ's clear reasons for the credibility determination were supported by substantial evidence on the record. Thus, any error the ALJ made regarding the difference between muscle spasms and muscle atrophy is harmless. *See Diorio*, 721 F.2d at 728.

Seventh, plaintiff argues that the ALJ spent a disproportionate time discussing

plaintiff's weight,[1] including her noncompliance with doctors' orders to lose weight; plaintiff maintains that she never claimed her weight was disabling or limiting. (Doc. No. 16, at 5.) The ALJ stated that Marc Goldman, M.D., plaintiff's treating neurosurgeon, advised plaintiff to start a home exercise program and to lose weight, but plaintiff "did not follow the doctor's advice." (R. 14, citing R. 297, 299). The ALJ considered plaintiff's "obesity in combination with her other impairments" and concluded that plaintiff "is not restrictively obese at 240 pounds and after a specific function-by-function analysis of her exertional and nonexertional limitations . . . she could perform light work despite her lumbar disc disease[,] obesity, and carpal tunnel syndrome." (R. 19, citing SSR 02-01p); *see also* SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002) (evaluation of obesity). Plaintiff states that she discussed her weight with Dr. Goldman, who "drastically restricted her allowable exercise, and that he had agreed that significant weight loss would be extremely difficult given Claimant's lack of mobility secondary to her lumbar and SI joint dysfunction." (Doc. No. 16, at 5, citing R. 48.) The portion of the record plaintiff cites does not entirely support her statement and is, in fact, her testimony that she asked her doctors, "how can you lo[]se weight if you can't exercise," and "Dr. Goldman smirked and he said, well, that's a good point." (R. 48). Dr. Goldman recommended in November 2007, "FOR HER LOW BACK PAIN, SHE NEEDS TO LOSE WEIGHT AND BEGIN PT." (R. 297, 448). In March 2008, Dr. Goldman said that plaintiff could "resume home back exercises." (R. 278). In November 2008, Dr. Goldman

---

[1]Plaintiff testified at the hearing she was 5'2" and weighed 240 pounds. (R. 34).

recommended "low impact aerobic exercises and using proper lifting technique." (R. 386). The Commissioner may not rely solely on a claimant's failure to accomplish a recommended weight loss as grounds to deny disability status. *See McCall v. Bowen*, 846 F.2d 1317, 1319 (11th Cir. 1988) ("A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment."). Here, the ALJ properly considered plaintiff's obesity along with other relevant factors in assessing the credibility of her subjective complaints, and he gave reasons supported by substantial evidence for finding that plaintiff's obesity did not impose limitations on her ability to work greater than those reflected in the RFC finding. (R. 19). Therefore, the ALJ did not err in considering plaintiff's obesity.

Eighth, plaintiff argues that the ALJ erroneously stated that Kenneth Edwards, D.C., a chiropractor, based his RFC evaluation on a one-time examination, and that the ALJ erroneously stated that Dr. Edwards had never previously examined or treated plaintiff. Plaintiff also suggests that the ALJ did not have the records of the testing from Dr. Edwards's office, and argues the ALJ should have given substantial weight to Dr. Edwards's opinion in determining plaintiff's RFC. (Doc. No. 16, at 5-6, R. 20). The medical evidence shows that plaintiff was seen at Dr. Edwards's office for a Computerized Muscle Strength Test and Range of Motion Testing about two months before Dr. Edwards completed the RFC evaluation form. (R. 538-40). It is not clear from the record that Dr. Edwards did the testing,

11

although he attached it and referred to it in his evaluation. (R. 562-64). Additionally, the record includes no treatment notes from Dr. Edwards, but only the muscle strength/range of motion testing results. In any event, any error the ALJ made in stating that Dr. Edwards examined plaintiff only once is harmless. Contrary to plaintiff's allegation, all the evidence was before the ALJ, who specifically referred to the testing and determined that Dr. Edwards's opinion was "not persuasive when contrasted with facts of record." (R. 15, 20). As a chiropractor, Dr. Edwards was not an "acceptable medical source" for a medical opinion. *See* 20 C.F.R. §§ 404.1502, 404.1527(a)(2) (only acceptable medical sources can render medical opinions). The opinions of "other sources," such as a chiropractor, may be used to show the severity of the impairment and how it affects the claimant's ability to work. *See* 20 C.F.R. § 404.1513(d). In weighing opinions of "other sources," the ALJ considers how long the source knew the individual, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, the source's area of expertise, and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4 (Aug. 9, 2006) (applying same factors to consider opinions from "other sources" as those in 20 C.F.R. 404.1527(d)). The ALJ found Dr. Edwards's opinion unpersusasive, in part because Dr. Edwards wrote on the evaluation that he "would have preferred getting a request with more than 30 min. notice that this was needed. Hope this helps and see attached [testing results]." (R. 562). The ALJ reasonably inferred that Dr. Edwards's statement "suggests he was rushed

and simply repeating the claimant's subjective allegations." (R. 20). The ALJ's decision was supported by substantial evidence on the record, and any error the ALJ made regarding the number of times plaintiff saw Dr. Edwards was harmless. *See Diorio*, 721 F.2d at 728.

Finally, plaintiff argues that the ALJ erred by ignoring the vocational expert's testimony that a person with plaintiff's age, education, and past relevant work experience "could not maintain the work standards of full time competitive employment" if "because of frequent unplanned breaks to rest and lie down or be absent from a work, it gets to a point this person cannot complete a 40 hour week, an eight hour day or an equivalent schedule on a regular and continuous basis." (Doc. No. 16, at 7, R. 52). Plaintiff argues that the ALJ also erred in ignoring the vocational expert's testimony that a person limited in the way plaintiff testified, that is, who could not stand or walk for more than fifteen minutes, and who could not sit "for a prolonged amount of time," would not be able to perform even sedentary jobs. (R. 37, 42, 55). The ALJ was not required to accept the vocational expert's answers to hypotheticals where, as here, the ALJ articulated clearly why the proposed limitations were not supported by substantial evidence on the record. *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"). Therefore the ALJ did not need to include the testimony regarding the additional hypotheticals in the decision.

### Listing § 1.02(A) and Listing § 1.04(A)

The ALJ determined that plaintiff did not meet or medically equal "any listed

impairment in the Listing of Impairments, including Section 1.00 . . . the criteria for which I fully considered." (R. 17). Plaintiff argues that the ALJ erred by failing to find she meets or medically equals the criteria for Listing § 1.02(A) (major dysfunction of a joint), and Listing § 1.04(A) (disorders of the spine). (Doc. No. 16, at 8-9). Listing § 1.02(A) requires certain medical findings[2] "resulting in inability to ambulate effectively." 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.02(A). "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." Ineffective ambulation generally involves ambulation with "use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. § 404, Subpt. P, App. 1 § 1.00(B)(2)(b). The ALJ found plaintiff that could stand and walk about six hours a day with the ability to alternate sitting and standing at thirty-minute intervals. (R. 17). Plaintiff's ability to ambulate effectively precludes a finding of disability under Listing § 1.02(A) because she does not meet *"all* the criteria" for the listing. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original) ("An impairment that manifests only some of those criteria, no matter how

---

[2]Listing § 1.02 is:
Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; . . .

severely, does not qualify."). The ALJ articulated adequate reasons for finding plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [RFC]." (R. 19). Plaintiff's medical records bear this out, as well as plaintiff's statements that she attended class, earned good grades, concentrated well enough to drive, cared for her children, cared for her pet, cared for her personal needs, washed clothes, prepared meals, and enjoyed time with family and friends. (R. 15-16, 19, 165-72). Consequently, the ALJ properly considered and determined that plaintiff did not meet Listing § 1.02(A)

Likewise, plaintiff does not meet or medically equal Listing 1.04(A) for disorders of the spine. Listing § 1.04 includes, among other things, degenerative disc disease or vertebral fracture resulting in compromise of a nerve root or the spinal cord with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A). In summarizing the medical record, the ALJ found that "[e]xaminations revealed [plaintiff] has no muscle atrophy present, has full active range of motion with flexion, but limited active range of motion with extension of the lumbar (to 10 degrees). Her range of motion was full and painless in all major muscle groups and joints." (R. 14). The ALJ also found "the medical record does not support muscle atrophy due to immobility." (R. 19). A month after her accident, an electromyography ("EMG") test

showed no evidence of left cervical radiculopathy or brachial plexopathy. (R. 14, 268). In October 2007, Dr. Canedo reported plaintiff had motor strength of 5/5, and bulk and tone were symmetrical in all extremities, and Dr. Canedo reported that plaintiff's MRI showed only "[m]ild active radicular process involving L4, L5 nerve root level on the left" and "[m]inimal anterior compression of L1," and recommended "[c]onservative management while undergoing neurosurgical workup." (R.14, 428, 432, 433). In January and February of 2008, Dr. Goldman found plaintiff had intact and symmetrical muscle strength as well as normal and symmetrical muscle tone. (R. 274, 276). In February 2008 plaintiff had positive straight leg raising on the right at 15 degrees. (R. 276). In March, May, and June 2008, Dr. Goldman reported that plaintiff's muscle strength was intact and symmetrical, and her muscle tone was normal and symmetrical in all four extremities. (R. 278, 283, 285). As the ALJ articulated, from July through November 2008, Dr. Dawson reported negative straight leg raises and muscle strength 5/5 in all major muscle groups. (R. 14, 381, 383, 385). Consequently, the ALJ's decision that plaintiff did not meet Listing 1.04(A) was based on substantial evidence in the record.

### Additional Evidence Not in the Administrative Record

Plaintiff asks the court to consider evidence that plaintiff was in another motor vehicle collision resulting in injuries on December 3, 2010, in which she suffered new injuries, and has since been prescribed strong pain medication for chronic pain. (Doc. No. 16, at 9-10; Doc. No. 16-1, Exhibit B). The evidence was not part of the administrative record, however;

therefore, this court may not consider it. *See* 42 U.S.C. § 405(g) (providing, in relevant part, "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The court may remand under sentence six of § 405(g) if "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986) (citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985)). The evidence that plaintiff submits does not meet that standard because it relates to matters that happened only after the ALJ's decision and the relevant time period for which plaintiff sought disability benefits. Thus, the evidence is not "material," and does not warrant remand.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the ALJ's decision that plaintiff was not disabled for purposes of her Title II claims is supported by substantial evidence and a proper application of the law. Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the decision of the Commissioner be AFFIRMED.

The Clerk of the Court is ORDERED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties to this action. The parties are DIRECTED to file any objections to this Recommendation on or before September 8, 2014. Any objections filed

must identify specifically the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Resolution Trust Co. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson,* 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 25th day of August, 2014.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE